IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL RAY TAYLOR                    Civil No. 05-1088-AA
                                          OPINION AND ORDER

            Petitioner,

        vs.

BRIAN BELLIQUE, Superintendent,
Oregon State Penitentiary,

            Respondent.
─────────────────────────────────

Dennis N. Balske
Attorney at Law
621 SW Morrison, Suite 1025
Portland, Oregon 97205
      Attorney for petitioner

Hardy Myers
Attorney General
Douglas Y.S. Park
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
      Attorneys for respondent

AIKEN, Judge:

Page 1 - OPINION AND ORDER

Petitioner filed a petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2254.  The petition is denied and the
case is dismissed.

BACKGROUND

Petitioner brings this habeas petition to challenge his
convictions and sentences for Intentional Murder with a Firearm,
and Felon in Possession of a Firearm (two counts).

In April 1996, petitioner shot and killed his wife.
Petitioner was convicted after a jury trial in Lane County,
Oregon.  The court sentenced petitioner to life in prison with a
25 year minimum for Intentional Murder with a Firearm, 36 months
consecutive for one count of a Felon in Possession of a Firearm,
and 36 months probation for the second count of a Felon in
Possession of a Firearm.

On direct appeal, petitioner raised four assignments of
error alleging that his sentences were unconstitutional because
his Fifth Amendment right to silence had been violated at trial.
Resp. Ex. 103 at 8-23.  The Oregon Court of Appeals affirmed
petitioner's sentence without a written opinion, and the Oregon
Supreme Court denied review.  State v. Taylor, 169 Or. App. 588,
9 P.3d 158, rev. denied, 331 Or. 334, 23 P.3d 986 (2000).
Petitioner then filed an amended petition for post-conviction
relief in Taylor v. Palmateer, Marion County Circuit Court Case
No. 01C10359, and was again denied relief.  The Oregon Court of

Appeals affirmed the denial of relief without a written opinion and the Oregon Supreme Court denied review.  <u>Taylor v. Palmateer</u>, 196 Or. App. 353, 103 P.3d 1211 (2004), <u>rev. denied</u>, 338 Or. 375, 110 P.3d 114 (2005).

Petitioner initially raised three grounds for relief in his Amended Petition for Writ of Habeas Corpus before this court: (1) petitioner's right to remain silent under the Fifth Amendment was violated during trial when law enforcement officers commented on his silence; (2) petitioner's right to a fair trial under the Fourteenth Amendment was violated as a result of the trial judge's evidentiary ruling; and (3) petitioner's right to effective assistance of counsel was denied due to his trial attorney's failure to object to prejudicial statements made by a witness.  Petitioner concedes Grounds Two and Three, and they are therefore dismissed by this court.  The disposition of the first ground is discussed below.

<u>STANDARD OF REVIEW</u>

A district court may not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "Clearly established Federal law" means the holdings, and not the dicta of the relevant Supreme Court decisions in effect at the time of the state trial. Williams v. Taylor, 529 U.S. 362, 405 (2000).

The "contrary to" clause means that a state court decision is "contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003).

The "unreasonable application" clause means that "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 75. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable. Id.

Habeas relief is warranted only if the constitutional error

at issue had a "substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993). When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000). In such a case, even if the district court independently reviews the record, it still defers to the state court's ultimate decision. <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).

<u>DISCUSSION</u>

Petitioner alleges that the trial prosecutor repeatedly questioned law enforcement witnesses regarding petitioner's silence before arrest, in violation of his Fifth Amendment right against self-incrimination. Petitioner specifically argues that the trial court erred in ruling that law enforcement witness comments regarding petitioner's silence were demeanor evidence, and this error had a substantial and injurious effect on the jury.

The questions before the court are whether petitioner's constitutional right to remain silent as defined by the United States Supreme Court was violated, and whether the judgment by the Oregon courts refusing to set aside his sentence 'was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' within the meaning of 28 U.S.C. § 2254(d)(1).

A.    Supreme Court Fifth Amendment Jurisprudence

The Fifth Amendment provides that "No person shall be compelled in any criminal case to be a witness against himself." The Fifth Amendment self-incrimination privilege "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Griffin v. California, 380 U.S. 609, 615 (1965). While it is a violation of due process to comment on a defendant's post-Miranda silence, Doyle v. Ohio, 426 U.S. 610, 619 (1976), pre-Miranda silence may be used to impeach a defendant. Fletcher v. Weir, 455 U.S. 603, 607 (1982); Jenkins v. Anderson, 447 U.S. 231, 240 (1980).

Whether a defendant's silence is accorded the degree of protection afforded post-Miranda silence depends on the custodial nature of the police officer-suspect interaction. When a suspect is taken into custody or otherwise deprived of his freedom by authorities in a significant way and is subject to questioning, then the Fifth Amendment privilege is jeopardized. Miranda v. Arizona, 384 U.S. 436, 444 (1966). The safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest.

<u>Berkemer v. McCarty</u>, 468 U.S. 420, 440 (1984).  If a suspect is subjected to treatment that renders him "in custody" for practical purposes, as determined from the perspective of a reasonable person in the suspect's position, he will be entitled to the full panoply of protections prescribed by <u>Miranda</u>.  <u>Id</u>. at 440, 442.  The mere fact that an investigation has focused on a suspect does not trigger the need for <u>Miranda</u> warnings in non-custodial settings.  <u>Minnesota v. Murphy</u>, 465 U.S. 420, 431 (1984).

In sum, if there is a custodial nature to the police-suspect encounter, then comments on the suspect's silence or admission of his statements would be in violation of the Fifth Amendment. However, if custody has not yet occurred, then any pre-arrest statements are admissible, including demeanor evidence.

B.    <u>Violation of Petitioner's Right to Remain Silent</u>

Here, petitioner identifies four assignments of error that allegedly violated his Fifth Amendment right to silence during trial.  Three assignments of error refer to the trial court's denial of three motions for a mistrial on the grounds that the testimony of Officer Green, Officer Deshpande, and Sergeant Roberts violated petitioner's Fifth Amendment rights.  The final assignment of error relates to the trial court's denial of petitioner's motion requesting that the court direct the prosecutor not to ask certain questions regarding Officers Green

and Deshpande's impressions of petitioner upon their arrival at the scene of the crime.

Officer Green was the first officer to arrive at petitioner's home after petitioner called 911 and told the operator that someone had shot his wife.  Officer Green testified that he was in contact with petitioner for thirty seconds to one minute before Officer Deshpande arrived.  Trial Trans. at 371. Officer Green testified that he did not question petitioner about the crime.  In fact, the only questions Officer Green asked petitioner were whether he "was okay, if he was injured."  Id. at 379.  At trial, the prosecutor asked Officer Green whether petitioner expressed any remorse for what had occurred.  Id. Officer Green responded, "No. He didn't say anything -- or, just stood motionless."  Id. at 380.  Petitioner moved for a mistrial and the court denied the motion because there was not a substantial violation of petitioner's right to remain silent. Id. at 381-82.  The court offered to give the jury a cautionary instruction, however petitioner declined the instruction.  Id. at 382.

Regarding Officer Green's initial encounter with petitioner, I find that petitioner was neither actually arrested, nor the functional equivalent thereof.  Officer Green's questions did not seek to compel information, rather they sought to assess petitioner's safety.  This is a reasonable response given Officer

Green's information upon arrival on the scene that someone, but not petitioner, had shot his wife, thus prompting concerns for the safety of other household members.  The Fifth Amendment right to silence was not invoked at this stage because Officer Green had not given <u>Miranda</u> warnings, and because Officer Green's questions were not intended to compel, nor did they compel, incriminating testimony.

Officer Deshpande was the next officer to arrive at petitioner's house.  Officer Deshpande testified that petitioner appeared "very subdued,...in a daze," <u>Id</u>. at 386, and that he asked petitioner "if he would like to sit in a heated patrol car while we sorted this out."  <u>Id</u>. at 385.  At trial the prosecutor asked if petitioner made any statements to Officer Deshpande. Petitioner's counsel objected to the prosecutor's question and the court sustained the objection.

The trial court correctly ruled that comments regarding petitioner's statements may be off limits if the statements are offered in response to coercive questioning.  Coercive questioning is an indication that a defendant is "in custody" and thus <u>Miranda</u> protections would attach.  The Supreme Court, however, has not gone so far as to assert that the Fifth Amendment also protects pre-arrest silence or pre-arrest voluntary statements.  <u>See</u> <u>Jenkins v. Anderson</u>, 447 U.S. 231, 236 n. 2 (1980).  Thus, the trial court's ruling sustaining

petitioner's objection to pre-arrest statements extended petitioner's protection even beyond that afforded by the Supreme Court.  Certainly that ruling benefitted petitioner and secured, rather than violated, petitioner's right to remain silent under the Fifth Amendment.

Petitioner's third assignment of error is that the trial court denied an instruction sought by petitioner's counsel seeking to stop the prosecutor from commenting on petitioner's exercise of his Fifth Amendment rights.  At the close of Officer Deshpande's testimony, defense counsel requested that the court order the prosecutor to stop "introducing [petitioner's] silence" to the jury.  Trial trans. at 388-89.  In particular, petitioner's counsel referred to the previous objections during Officers Green and Deshpande's testimony in the first and second assignments of error, respectively.  The court reminded petitioner's counsel that the objection during Officer Deshpande's testimony had been sustained, and denied the motion. Id. at 389.  As explained above, neither the testimony of Officers Green or Deshpande violated petitioner's right to silence under the Fifth Amendment.  As such, the trial court did not need to separately direct the prosecutor to refrain from commenting on petitioner's silence.

Petitioner's fourth assignment of error concerned Sergeant Roberts.  Sergeant Roberts met petitioner at his house and asked

Page 10 - OPINION AND ORDER

him if he would come down to the police station to talk further.
The prosecutor asked Sergeant Roberts if he noticed petitioner
cry, to which Sergeant Roberts responded that "there were times
when he would sob." Id. at 682.  The prosecutor then asked
Sergeant Roberts, "when he did that [sobbed], did he volunteer
any statements?" Id.  Sergeant Roberts responded, "No, he did
not." Id.  Petitioner objected that the prosecution "put
[petitioner's] silence before the jury." Id.  The trial court
denied petitioner's motion stating that the questioning is still
in the area of demeanor evidence.  The court further clarified
that "if it gets to the point...where the defendant remains
silent in response to questions, that would be totally
inappropriate...[and] the Court would have to grant a mistrial."
Id. at 685.

     I find that at the time of Sergeant Roberts' interaction
with petitioner, it is clear that Sergeant Roberts did not try to
compel statements from petitioner.  In fact, the only actual
question that Sergeant Roberts posed to petitioner was to inquire
whether he would come down to the police station to answer
questions.  At trial, the prosecution only asked Sergeant Roberts
about volunteered statements made by petitioner while sobbing at
the scene.

///

///

Page 11 - OPINION AND ORDER

C.    <u>Harmless Error</u>

If an error has occurred at trial, the reviewing court should ask whether the error "had a substantial and injurious effect or influence in determining the jury's verdict. <u>Brecht</u>, 507 at 637.  In petitioner's case, I have found no error at trial.

Even if a violation of petitioner's right to remain silent were found, the comments highlighted by petitioner as error were harmless in light of the volume of other testimony presented to the jury, the most significant of which was petitioner's admission that he actually shot his wife.  Trial trans. at 800-08.  Further, the trial court gave jury instructions to prevent any adverse inferences that may have been drawn against petitioner by specifically instructing the jury they may not consider petitioner's silence.

<u>CONCLUSION</u>

Petitioner's habeas corpus petition (doc. 1) is denied and the case is dismissed.

IT IS SO ORDERED.

Dated this  26   day of February 2007.


                    /s/ Ann Aiken
                    Ann Aiken
                United States District Judge


Page 12 - OPINION AND ORDER